IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| EDWARD P. HAGEN, D.O., | |
| Plaintiff, | No. C11-4047-MWB |
| vs. | |
| SIOUXLAND OBSTETRICS & GYNECOLOGY, P.C., an IOWA CORPORATION, PAUL J. EASTMAN, M.D., TAUHNI T. HUNT, M.D., ANGELA J. ALDRICH, M.D., and KIMBERLY A. LIEF, M.D., | **ORDER** |
| Defendants. | |

_____

This matter is before me on St. Luke's Regional Medical Center's (St. Luke's) motion (Doc. No. 43) to quash a subpoena issued by defendants. Defendants filed a resistance (Doc. No. 51) on October 18, 2012. I conducted a telephonic hearing on November 27, 2012. Matt Early and Joseph Fitzgibbons appeared on behalf of St. Luke's, Dustan Cross and Jeff Wright appeared on behalf of defendants and Stanley Munger appeared on behalf of the plaintiff. The matter is now fully submitted.

*Background*

Edward Hagen, D.O., brings claims of fraudulent misrepresentation, conspiracy to defraud, forgery, retaliatory discharge in violation of public policy, negligence, breach of fiduciary duty, breach of contract, promissory estoppel, unjust enrichment, tortious interference with business relationships, tortious interference with prospective business advantage, intentional infliction of emotional distress, and a claim for punitive damages, against his previous employer and individual employees. Some of those individual employees were also equity owners, officers and directors along with Hagen,

who served as President. On September 26, 2012, Siouxland Obstetrics & Gynecology, P.C., (Siouxland) issued a document production subpoena to St. Luke's seeking "Dr. Edward P. Hagen's COMPLETE credentials file and/or medical staff file, including, but not limited to any and all application documents, performance reviews, attendance records, job description/job duties, disciplinary reports, termination records, writings, and correspondence." Doc. No. 43, Exhibit A. St. Luke's filed this motion to quash the subpoena on October 11.

*Analysis*

St. Luke's argues the subpoena should be quashed because certain requested documents are privileged and confidential and therefore not subject to discovery or subpoena. St. Luke's bases this argument on Iowa Code § 147.135(2) which states in pertinent part:

> Peer review records are privileged and confidential, are not subject to discovery, subpoena, or other means of legal compulsion for release to a person other than an affected licensee or a peer review committee, and are not admissible in evidence in a judicial or administrative proceeding other than a proceeding involving licensee discipline or a proceeding brought by a licensee who is the subject of a peer review record and whose competence is at issue.

"Peer review records" include "all complaint files, investigation files, reports, and other investigative information relating to licensee discipline or professional competence in the possession of a peer review committee or an employee of a peer review committee." Iowa Code § 147.135(2). However, mere possession of documents by the peer review committee does not make those documents privileged if they are discoverable from other sources. *See id.* ("Information or documents discoverable from sources other than the peer review committee do not become nondiscoverable from the other sources merely because they are made available to or are in the possession of a peer review committee.").

St. Luke's motion gives rise to two issues. First, does the privilege apply at all in this case? It does not apply in "a proceeding brought by a licensee who is the subject of a peer review record and whose competence is at issue." No one disputes that Hagen is a "licensee who is the subject of a peer review record." If his competence is at issue in this case, as defendants contend, then the privilege does not apply.

Second, if the privilege does apply, what is its scope? St. Luke's contends that its scope is broad, covering virtually all documents in its credentialing and peer review files for Hagen. Defendants argue that it applies only to documents that directly relate to the peer review process.

***Is Hagen's Competence At Issue?*** St. Luke's asserts that the statutory privilege applies because Hagen's competence is not at issue in this case. Defendants counter by alleging that Hagen has placed his competence at issue with regard to two of his claims.[1] First, Hagen alleges he was terminated in retaliation for stating that if a Siouxland doctor had committed malpractice, he should be reported to the Iowa Board of Medicine. Second, in his claim of breach of fiduciary duty, Hagen alleges the defendants defrauded him and defamed his business and personal reputation. Defendants believe these assertions and allegations dealing with his professional and personal reputation show that he has placed his competence at issue. Also, during the hearing defendants' counsel focused on Hagen's denial of allegations that he treated people rudely and otherwise acted in a boorish manner while employed by Siouxland. Counsel argued that this kind of alleged behavior is relevant to the claims in this case and somehow bears on the issue of Hagen's "competence."

I find that Hagen's competence is not at issue in this case, at least as the word is used in the statute. Section 147.135 defines "peer review records" to include "information relating to licensee discipline or professional competence." Iowa Code §

---

[1] While Hagen did not file a written response to St. Luke's motion, his counsel indicated during the hearing that Hagen agrees with St. Luke's position. Among other things, this means Hagen himself does not believe that he has placed his competence at issue in this case.

147.135(2) [emphasis added]. I see nothing in the statute to suggest that the word "competence," when used in elsewhere in the statute, means something other than "professional" competence. Having reviewed Hagen's claims in this case, I see no indication that his professional competence as a practicing physician will be a matter for the jury to resolve at trial. Nor do I believe that allegations about Hagen's interpersonal skills, whether relevant or not, go to the issue of his professional competence. In short, I reject defendants' argument that the section 147.135 privilege is inapplicable because Hagen's competence is at issue.

*What Is The Scope Of The Privilege?* Having found that the statutory privilege applies to this case, I must now consider its scope. St. Luke's asserts that the privilege is very broad, covering virtually all of the requested documents, and relies on *Day v. The Finley Hosp.*, 769 N.W.2d 898 (Iowa Ct. App. 2009). In *Day,* the Iowa Court of Appeals held that a doctor's credentialing file fell under the statutory privilege. *Id.* at 902.

Defendants argue that section 147.135 does not extend to credentialing files and that the *Day* court interpreted the statute much too broadly. They argue that under the plain language of the statute, documents related to routine credentialing do not fall under the privilege. They point out that the terms "complaint" and "investigation" suggest specific conduct-related review, and that credentials, applications, routine performance reviews, attendance records, job descriptions, termination records and writings and correspondence are not conduct-specific documents.

Defendants also address the policy reasons behind the statutory privilege. In *Carolan v. Hill*, 553 N.W.2d 882, 886 (Iowa 1996), the Court quoted the following policy explanation:

> It allows a physician to consult with peers about his [or her] care and treatment of a particular patient. It also allows critical retrospective analysis of cases to learn better methods of treatment for the future. Similarly, it encourages peers to lodge complaints and initiate disciplinary

4

> action against those who are practicing substandard care, without fear of disclosure or retribution.

*Carolan*, 553 N.W.2d at 886 (quoting Thomas A. Finley et al., *Tort Reform and Medical Malpractice: Iowa's Past, Present, and Future*, 36 Drake L. Rev. 669, 676 (1986-87)). According to defendants, the policy behind the privilege supports their view that the privilege is limited to self-critical analysis, complaints and investigatory materials, but not general credentialing files. While they acknowledge that some of the documents they seek may include self-critical analysis, complaints and investigatory materials, they contend all other documents, including general credentialing files, should be produced.

*Day* is the only reported Iowa case to consider whether credentialing documents fall within the peer review privilege. The Iowa Court of Appeals found that section 147.135 unambiguously extends the peer review privilege to credentialing files because it applies to all "investigation files," "reports," and "other investigative information" in the custody of the peer review committee, whether it was generated by the committee or not. *Day*, 769 N.W.2d at 901. While I am not bound by decisions of a state intermediate appellate court, they are persuasive authority and I must follow them when they are the best evidence of state law. *United Fire & Cas. Ins. Co. v. Garvey*, 328 F.3d 411, 413 (8th Cir. 2003) (citing *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 883 (8th Cir. 2000)). "Intermediate state court decisions should not be disregarded 'unless [I am] convinced by other persuasive data that the highest state court would decide [the issue] otherwise.'" *United Fire & Cas. Ins. Co.*, 328 F.3d at 413 (citing *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).

The Iowa Supreme Court has not ruled on the issue of whether *Day* correctly construes the scope of the peer review privilege. In *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 806 N.W.2d 282, 291-92 (Iowa 2011), the Court declined to review *Day's* interpretation of section 147.135 because the issue was not preserved for appeal. However, the Court did acknowledge the split among states on the issue, citing

5

seven cases from other jurisdictions in which courts found that the peer review privilege extends to credentialing documents, along with three cases reaching the opposite conclusion. *Id.* at 291 n.6.

In the three years since *Day* was decided, its holding has not been disturbed by Iowa's Supreme Court or Legislature. I find that holding to be the best evidence of current Iowa law on this issue. While it is certainly possible that the Iowa Supreme Court will someday construe section 147.135 narrowly, defendants have not persuaded me that this development is likely. Indeed, the Court has interpreted the statutory privilege as "broad" since its inception. *Hutchinson v. Smith Laboratories, Inc.*, 392 N.W.2d 139, 141 (Iowa 1986). It acknowledged this interpretation in *Carolan* and identified policy reasons for a broad privilege. *Carolan*, 553 N.W.2d at 886. At this point, I am not convinced that the Iowa Supreme Court will overrule *Day*.

### *Conclusion*

Based on my finding that *Day* represents existing Iowa law as to the scope of the statutory peer review privilege, the subpoena must be quashed. St. Luke's motion (Doc. No. 43) is **granted.**

**IT IS SO ORDERED.**

**DATED** this 7th day of December, 2012.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA